IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MOLLY GIBBS, et al., | ) NO. C09-5310-RBL |
| | ) |
| Plaintiffs, | ) PLAINTIFFS' RESPONSE TO DEFENDANTS' |
| | ) MOTION FOR SUMMARY JUDGMENT ON |
| v. | ) ALL REMAINING CLAIMS |
| | ) |
| CITY OF TACOMA, et al., | ) NOTED FOR: AUGUST 13, 2010 |
| | ) |
| Defendants. | ) |

Plaintiffs Molly Gibbs, William W. Hamilton, Linda K. Jansen, and Thomas W. Johnson request the Court deny Defendants Pierce County's and City of Tacoma's Motion for Summary Judgment on All Remaining Claims, dkt. 27.

Plaintiffs' Response to Defendants' Motion for Summary Judgment on All Remaining Claims is based upon the Declaration of Christopher Taylor, with attached exhibits; as well as the previously filed Declaration of Chandra Allen, dkt. 28; Affidavit of James D. Barrett, dkt. 29; and Affidavit of Jean P. Homan, dkt. 31.

## I. STATEMENT OF FACTS

On March 11, 2007, Plaintiffs Gibbs and Johnson were members of an organization called Port Militarization Resistance (PMR), and although Plaintiffs Jansen and Hamilton did not consider themselves "members," both had some involvement with PMR and agreed with

RESPONSE TO 2ND SUMMARY JUDGMENT
MOTION – Page 1 of 25

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



PMR's ideas and principles. Decl. of Taylor, Ex. A, p. 35, ll. 17-24, p. 39, ll. 4-6, p. 40, ll. 21-22; Ex. C, p. 22, ll. 6-9; Ex. D, p. 26, ll. 2-8; Ex. B, p. 16, ll. 19-20, p. 12, ll. 6-9. PMR was an organization tasked with ending the "community's complicity in what [the members] believed to be illegal wars in Iraq and Afghanistan." Decl. of Taylor, Ex. C, p. 26, ll. 23-25, p. 27, ll. 1-5. Failure to "stand[] up and tak[e] a position to try and change the policy" of a publicly-owned port in "transition[ing] or transfer[ring] equipment to and from...the war in Iraq, because [the members] felt that the war was in violation of the law," was considered an act of complicity. Decl. of Taylor, Ex. D, p. 26, ll. 12-25, p. 27, l. 1. PMR did not dictate what strategies its members should use "in ending [the] community's complicity with these illegal wars." Decl. of Taylor, Ex. C, p. 28, ll. 11-25., However, PMR did outline a "continuum of strategies beginning with general public education and awareness of the community and key decision makers ranging at the other end of the continuum to nonviolent civil disobedience" that it expected people might employ, leaving the decision about what strategy to employ up to the individual, but encouraging the individual to start at the "public education" end rather than the "nonviolent civil disobedience" end of the continuum to reach the objectives. *Id.* at p. 27, ll. 7-13, p. 28, ll. 13-25. Prior to March 2007, PMR developed a strategic plan that "articulated why the organization existed" and outlined that "range of strategies." *Id.*, p. 26, ll. 23-25, p. 27, l. 1, p. 28, ll. 12-19.

In March 2007, PMR took steps to publicize a demonstration near the Port of Tacoma. Decl. of Taylor, Ex. C, p. 86, ll. 23-25, p. 87, 1-6. The demonstration "started on the afternoon of March 3, 2007" and continued for eleven days. Aff. of Barrett, dkt. 29, ¶¶ 6-7. The demonstration was attended by PMR members, people associated with PMR, and people "who had no connection to PMR." Decl. of Taylor, Ex. C, p. 66, ll. 24-25, p. 67, ll. 1-4.

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



During the first day or two of the demonstration, Plaintiff Johnson had at least one conversation with Tacoma Police Department Sergeant Barrett "about the continuum of strategies that PMR had put in [the strategic] plan and that it's possible that people might use one or all of these strategies, people associated with PMR, and that there would potentially be other people there who had no connection to PMR who might use other strategies." Decl. of Taylor, Ex. C, p. 66, ll. 16-25, p. 67, ll. 1-4. At the time of that conversation, the Tacoma Police Department already had a copy of the strategic plan. *Id.* at p. 68, ll. 24-25, p. 69, ll. 1-8.

On March 3, 2007, the Tacoma Police Department established a "designated protest zone." Decl. of Taylor, Ex. E, p. 4, l. 1. On March 5, 2007, the Tacoma Police Department added "a barrier of barricades" to the designated protest zone that were "set in place" throughout the balance of the demonstration, although the location of the barricades changed at certain points in time during the demonstration. *Id.* at ll. 23-26; Aff. of Barrett, dkt. 29, ¶ 19. Throughout the demonstration, the Tacoma Police Department disallowed demonstration attendees from "pass[ing] this line of barricades." Decl. of Taylor, Ex. E, p. 4, ll 23-26.

On March 11, 2007, "on the west side [of the designated protest zone], the perimeter was established by a line of bike rack barricades placed just east of the railroad tracks" that "cross East 11th Street." Aff. of Barrett, dkt. 29, ¶¶ 20-21, Ex. 3. "When selecting the protest area on East 11th Street, [the Tacoma Police Department] specifically considered whether the protest zone was within sight and sound of the location where the ship was being loaded and the route that the military vehicles were taking." *Id.* at ¶ 22. The Tacoma Police Department, in selecting the location for the designated protest zone, "assumed that the protesters would...be visible and audible to" "the military personnel and longshoremen."*Id.*

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006

On March 11, 2007, Plaintiffs Gibbs, Jansen, Johnson, and Hamilton attended the demonstration. Decl. of Taylor, Ex. A, p. 62, ll. 8-11; Ex. B, p. 39, ll. 13-19; Ex. C, p. 26, ll. 23-25, p. 27, ll. 1-16, p. 90, ll. 9-13; Ex. D, p. 72, ll. 7-13, 21-25, p. 73, ll. 1-6. One of Plaintiffs' goals in attending the demonstration on March 11, 2007 was to deliver a document entitled "Citizen's Injunction to Halt the Shipment of Military Material to Iraq" to the Port of Tacoma Administrative Offices. Decl. of Taylor, Ex. A, p. 88, ll. 14-17, p. 2, ll. 14-15, p. 8, ll. 13-16, p. 9, l. 1-2, pp. 1-4, 18, and attachment to Ex. 12 of Deposition of Gibbs; Ex. B, p. 29, ll. 24-25, p. 30, ll. 1-2.; Ex. C, p. 71, ll. 3-9; Ex. D, p. 69, ll. 16-21. The final draft of the Citizen's Injunction was not finished until that day. Decl. of Taylor, Ex. C, p. 110, ll. 11-13. The entrance to the Port of Tacoma nearest the Port Administrative Offices was located near the intersection of East 11th Street and Milwaukee Way. Decl. of Taylor, Ex. D, p. 69, ll. 22-25, p. 70, ll. 1-25, p. 71, ll. 1-4, p. 49, ll. 14-25, and Ex. 4 to Deposition of Hamilton. That entrance was to the west of the western-edge of the designated protest zone. *Id.*

Prior to attempting to deliver the Citizen's Injunction to the Port Administration Office, Plaintiff Johnson communicated to Tacoma Police Sergeant Kitselman that it was the intention of a group of demonstration attendees—including Plaintiffs—"to go to the Port offices and to deliver this citizen's injunction." Decl. of Taylor, Ex. C, p. 71, ll. 3-5. Plaintiff Johnson also noted that the Tacoma Police Department had erected barricades between "where [the Plaintiffs] were and where those officers were and that in order to deliver the injunction [Plaintiffs] would need to cross that [barricade]." *Id.* at p. 71, ll. 5-9.

When Plaintiffs crossed the barricade, they were arrested for crossing the barricade. Decl. of Taylor, Ex. A, p. 65, ll. 15-16; Ex. B, p. 41, ll. 22-25; Ex. C, p. 139, ll. 9-16; Ex. D, p. 157, ll. 2-15. After being arrested, Plaintiffs were held in custody by Defendants City of

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



Tacoma and County of Pierce for over ten hours before being released. Decl. of Taylor, Ex. H, Bates No. PORT 001877; Ex. G.

## II. SUMMARY JUDGMENT STANDARD

A moving party is not entitled to summary judgment when there are genuine issues of material fact in dispute. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982). An issue of fact is a genuine issue for trial if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In determining whether genuine issues of material fact are in dispute, the court must view the facts and any inferences reasonably drawn from them in the light most favorable to the nonmoving party. *Leonard v. Robinson*, 477 F.3d 347, 353 (6th Cir. 2007).

## III. ANALYSIS

Units of local government are not entitled to sovereign immunity under the Eleventh Amendment. *Bd. of Trs. of the Univ. of Ala. v. Garrett,* 531 U.S. 356, 369 (2001). Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978), a plaintiff suing a unit of local government, such as a city or a county, must identify an unconstitutional policy or custom in order to prevail on a § 1983 claim against it. *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403-404 (1997). A single act by a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action ordered" may suffice in demonstrating that policy or custom. *Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986).

### A. PLAINTIFFS' FIRST AMENDMENT CLAIMS AGAINST TACOMA

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



The First Amendment prohibits Congress from enacting laws "abridging the freedom of speech...or of the right of the people to peaceably assemble, and petition the Government for a redress of grievances." U.S. Const. amend. I. The "constitutionally protected rights of free speech, free assembly, and freedom to petition for redress of...grievances...are protected by the Fourteenth Amendment from invasion by the States." *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963). "Three types of speech regulation are presumptively invalid: regulations on speech protesting government action, regulations affecting speech in a traditional public forum, and prior restraints." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1021 (9th Cir. 2008).

"Political speech is core First Amendment speech, critical to the functioning of our democratic system." *Id*. "[P]rotest of the United States military action in Iraq is the type of speech that rests on the highest rung of the hierarchy of First Amendment values." *Id*. (internal quotation omitted). "The practice of persons sharing common views banding together to achieve a common end is deeply embedded in the American political process." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907 (1982). "A march and other protest activities clearly constitute protected speech." *United States v. Baugh*, 187 F.3d 1037, 1042 (9th Cir. 1999). "[P]olitical demonstrations and protests [are] activities at the heart of what the Bill of Rights was designed to safeguard." *Jones v. Parmley*, 465 F.3d 46, 56 (2nd Cir. 2006). "Indeed...police may not interfere with orderly, nonviolent protests merely because they disagree with the content of the speech or because the simply fear possible disorder." *Id*.

Here, Plaintiffs Gibbs, Jansen, Johnson, and Hamilton were engaged in a political demonstration near the Port of Tacoma on March 11, 2007. Decl. of Taylor, Ex. A, p. 62, ll. 8-11; Ex. B, p. 39, ll. 13-19; Ex. C, p. 26, ll. 23-25, p. 27, ll. 1-16, p. 90, ll. 9-13; Ex. D, p. 72, ll.

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



7-13, 21-25, p. 73, ll. 1-6. As part of the demonstration, Plaintiffs Gibbs, Jansen, Johnson, and Hamilton intended to deliver the Citizen's Injunction. Decl. of Taylor, Ex. A, p. 88, ll. 14-17, p. 2, ll. 14-15, p. 8, ll. 13-16, p. 9, l. 1-2, pp. 1-4, 18, and attachment to Ex. 12 of Deposition of Gibbs; Ex. B, p. 29, ll. 24-25, p. 30, ll. 1-2.; Ex. C, p. 71, ll. 3-9; Ex. D, p. 69, ll. 16-21. Plaintiffs, by sharing common views and banding together to achieve a common end in the context of a political demonstration that protested the United States military action in Iraq and the support of that action by the Port of Tacoma, are entitled to a presumption that *any* regulations that impeded their speech were invalid.

Moreover, "[p]ublic places historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be public forums." *United States v. Grace*, 461 U.S. 171, 177 (1983) (internal quotations omitted). "In such places, the government's ability to permissibly restrict expressive conduct is very limited." *Id.* "Traditional public fora gain even more importance when they are host to core First Amendment speech." *Long Beach Area Peace Network*, 574 F.3d at 1022. "Government restrictions on the use of public places such as streets, sidewalks and parks risk placing speech on topics of public importance within the purview of only the wealthy or those who enjoy the support of local authorities." *Id.*

Here, Plaintiffs Gibbs, Jansen, Johnson, and Hamilton's participation in the political demonstration on March 11, 2007 was located entirely within public streets. Aff. of Barrett, dkt. 29, ¶¶ 15, 25. Those public streets are traditional public fora. *See Frisby v. Schultz*, 487 U.S. 474, 480-481 (1988) ("a public street does not lose its status as a traditional public forum simply because it runs through a [particular type of] neighborhood... No particularized inquiry into the precise nature of a specific street is necessary; all public streets are held in the public

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006

trust, and are properly considered traditional public fora"). Thus, Plaintiffs, by engaging in expressive activities on a public street, are entitled to a presumption that *any* regulations that impeded their speech were invalid.

"The government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant government interest, and that they leave open ample alternatives channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (internal quotations omitted).

**1. Tacoma's Restrictions Were Content-Based.**

A restriction is content-based, rather than content-neutral, if "the main purpose in [imposing] it was to suppress or exalt speech of a certain content, or it differentiates based on the content of speech on its face." *ACLU of Nevada v. City of Las Vegas*, 466 F.3d 784, 793 (9th Cir. 2006). Though "an improper censorial motive" is sufficient, such a motive is not necessary to render a restriction content-based. *Simon & Schuster, Inc. v. N.Y. State Crime Victims Bd.*, 502 U.S. 105, 117 (1991). If a restriction "distinguishes favored speech from disfavored speech on the basis of ideas or views expressed, it is content-based." *Long Beach Area Peace Network*, 574 F.3d at 1024 (internal quotations omitted). "The principal inquiry in determining content-neutrality...is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791. "The government's purpose is the controlling consideration." If a speech restriction is content-based, the restriction must be "necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end" and that is the least restrictive means of achieving that interest. *Perry Educ. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45 (1983).

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



Here, on March 11, 2007, Defendant City of Tacoma set up a designed protest zone that prevented demonstration attendees, including Plaintiffs, from entering portions of public streets. Aff. of Barrett, dkt. 29, ¶ 25. Specifically, a "section of East 11th Street west of the railroad tracks had been closed." *Id*. That section of East 11th Street contained the entrance to the Port of Tacoma nearest the Port Administrative Offices. Decl. of Taylor, Ex. D, p. 69, ll. 22-25, p. 70, ll. 1-25, p. 71, ll. 1-4, p. 49, ll. 14-25, and Ex. 4 to Deposition of Hamilton.

Tacoma Police Department indicate they set up a designated protest zone that prevented demonstration attendees from entering portions of public streets for multiple reasons. Aff. of Barrett, dkt. 29, ¶ 16. One of those reasons was to "allow for transport of the military vehicles and equipment in a safe and orderly manner." *Id*. In other words, the Tacoma Police Department barricaded a portion of a public street to political demonstration attendees because, *inter alia*, of its stated interest in "[p]rovid[ing] site security where military vehicles are parked" and "[p]roviding escort and protection for [the military] convoy." Decl. of Taylor, Ex. E, p. 2, ll. 5-11. The decision to barricade, as well as the location of the barricades, was influenced by "[i]ntelligence received of possible protest activity," which included at least one intelligence document from the "US Army Intelligence Corp and Fort Lewis." *Id*. p. 4, ll. 15-18, 23-26, p. 5, ll 4-12, , p. 6, ll. 16-20.

A municipality has a "strong interest in ensuring the public safety and order [and] in promoting the free flow of traffic on public streets." *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 768 (1994). A municipality does not have any interest in supporting a war effort. *See Deutsch v. Turner Corp.*, 324 F.3d 692, 712 (9th Cir. 2003) ("Matters related to war are for the federal government alone to address").

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



Certainly the Tacoma Police Department was aware throughout the demonstration that some of the demonstrators were "protesting the use of the Port of Tacoma for the shipment of military equipment and supplies for the war effort in Iraq." *See* Aff. of Barrett, dkt. 29, ¶ 6. Nevertheless, Tacoma Police Department justified its "actions and tactics" in part to "allow for transport of the *military* vehicles and equipment." Aff. of Barrett, dkt. 29, ¶ 29 (emphasis added). In other words, the Tacoma Police Department decided to erect barricades to prevent anti-war demonstrators from using engaging in expressive activity in a traditional public forum *in order to support the war effort*. Although Defendant City of Tacoma has an interest in promoting the free flow of traffic on public streets *generally*, Defendant City of Tacoma has no interest in promoting promoting the free flow of *military* traffic on public streets. By promoting the free flow of military vehicles and equipment on public streets specifically, Defendant City of Tacoma expressed disagreement with Plaintiffs' expressive activity, which was specifically designed to prevent the military vehicles and equipment from being transported. Moreover, Defendant City of Tacoma, by specifically citing to an interest in "allow[ing] the transport of military vehicles and equipment" in structuring "law enforcement actions and tactics," including the erection and placement of barricades, which thereby prevented Plaintiffs from engaging in expressive activity in a traditional public forum, was acting *because of* its disagreement with Plaintiffs' message.

Moreover, even if Defendant City of Tacoma's stated purposes are found not to have been motivated by its disagreement with the content of Plaintiffs' speech, the specific location of the barricades nevertheless distinguished favored speech from disfavored speech on the basis of ideas or views expressed.


The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



"The First Amendment mandates that we presume that speakers, not the government, know best both what they want to say and how to say it." *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 790-791 (1988). "[A] private speaker does not forfeit constitutional protection simply by combining multifarious voices, or by failing to edit their themes to isolate an exact message as the exclusive subject matter of the speech." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 569-570. "The location of the speech, like other aspects of presentation, can affect the meaning of communication and merit First Amendment protection for that reason." *Galvin v. Hay*, 361 F.3d 1134, 1144 (9th Cir. 2004). Moreover, the intended audience of the speech can affect the meaning of communication and merit First Amendment protection for that reason. *See Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir. 1990).

Here, Defendant City of Tacoma erected barricades to bound a designated protest zone. Aff. of Barrett, dkt. 29, ¶ 21. When deciding where to erect the barricades, Defendant City of Tacoma "specifically considered whether the protest zone was within sight and sound of the location where the ship was being loaded and the route that the military vehicles were taking." *Id.* at ¶ 22. That is, Defendant City of Tacoma decided to place the barricades where it did to ensure the demonstration attendees "would be...visible and audible to" "the military personnel and longshoremen involved in the moving of the military vehicles and equipment." *Id.* In placing the barricades where it did, Defendant City of Tacoma closed off the portion of the street that contained the entrance to the Port of Tacoma nearest the Port Administrative Offices. Decl. of Taylor, Ex. D, p. 69, ll. 22-25, p. 70, ll. 1-25, p. 71, ll. 1-4, p. 49, ll. 14-25, and Ex. 4 to Deposition of Hamilton. By selecting to place the barricades within sight and sound of the military personnel and longshoremen, and outside of sight and sound of the Port Administration

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006

Offices and its closest gate, Defendant City of Tacoma distinguished between favored speakers —those demonstration attendees whose intended audience consisted of military personnel and longshoremen—from disfavored speakers—those whose intended audience consisted of individuals "in a supervisory role or a position of authority" with the Port of Tacoma or "guards" at the gates of the Port of Tacoma. *See* Decl. of Taylor, Ex. D, p. 70, ll. 1-7; Ex. B, p. 61, ll. 12-13. Therefore, Defendant City of Tacoma's placing the barricade where it did was a content-based restriction.

A content-based restriction is presumptively invalid. *Simon & Schuster, Inc.*, 502 U.S. at 115. "[A] content-based regulation...is valid only if it serves a compelling government interest in the least restrictive manner possible." *Berger v. City of Seattle*, 569 F.3d 1029, 1052 (9th Cir. 2009).

### 2. Tacoma's Interests Were Not Compelling.

Although "as a general proposition...police have an interest in safety and avoiding collisions between cars and pedestrians," whether that interest is "compelling" is a question of fact. *See McTernan v. City of York, PA*, 564 F.3d 636, 650-651 (3rd Cir. 2009). The *McTernan* court found that because "the alley is lightly traveled," and the a "temporal gap" between the two "traffic incident[s]" and the police response were inconsistent with a finding of an "urgent safety hazard," and thus found the question of whether the interest was "compelling" or something less than "compelling" to be "a fact issue for the jury." *Id.*; *see also Jones*, 465 F.3d at 56-57 (compelling interest found where "clear and present danger of riot, disorder, interference with traffic upon public streets, or other immediate threat to public safety, peace, or order;" legitimate, but less than compelling, interest in non-immediate threats to public safety, peace and order).

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



Here, "[p]atrol cars and sawhorse barricades were placed at the intersection of Thorne Road and Ross Way to prevent vehicular traffic northbound past that intersection." Aff. of Barrett, dkt. 29, ¶ 20. Also, "patrol cars were placed on East 11th Street, somewhere in the block between Port of Tacoma Road and Thorne Road...mark[ing] the last point on East 11th Street...where vehicles could drive." *Id*. "Further, East 11th Street west of the patrol cars was completely closed to vehicular traffic" including the "portion of East 11th Street that forms a bridge over the private Port road." *Id*. at ¶¶ 20, 25. Moreover, "barricades were placed at the intersection of Milwaukee Way and Lincoln Avenue to prevent vehicular and pedestrian traffic on Milwaukee Way." *Id*. at ¶ 20. In other words, not only was there no vehicular traffic in the designated protest area, but there was also no vehicular traffic to the immediate west of the designated protest area. *See* Aff. of Barrett, Ex. 3, dkt. 29-1. Indeed, even the intermittent military vehicle traffic, such that it was, crossed East 11th Street about halfway between Milwaukee Way and the Puyallup River, approximately 1500 feet from the western edge of the designated protest zone, and even then the military traffic "crossed *under* East 11th." *See* Aff. of Barrett, Ex. 1-3, dkt. 29-1; Aff. of Barrett, dkt. 29, ¶ 18 (emphasis added).

Moreover, Defendant City of Tacoma cannot cite any traffic incident involving pedestrians and motor vehicles on the stretch of East 11th Street it closed off, let alone one that would indicate letting pedestrians into the area would represent an urgent safety hazard. Thus, it is a question for the jury and not appropriately resolved on summary judgment whether Defendant City of Tacoma's interest in safety and avoiding collisions between vehicles and pedestrian is a compelling interest.

**3. Tacoma's Restrictions Were Not Narrowly Tailored.**

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



Even if Defendant City of Tacoma's interest in public order and safety on its public streets was compelling, each particular restriction must be narrowly tailored to that interest. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992). That is, each restriction may "be employed only where it is *necessary* to serve the asserted compelling interest." *Id*. (internal quotations removed, emphasis in original). A restriction is not narrowly tailored to a compelling interest if a "less restrictive alternative is readily available." *Boos v. Barry*, 485 U.S. 312, 329 (1988).

A content-neutral restriction must also be narrowly tailored, but need only serve a significant, rather than compelling, interest. *Bay Area Peace Navy*, 914 F.2d at 1227. "The government bears the burden of proving that the 'narrowly tailored' prong [is] satisfied." *Id*. In the content-neutral context, to be narrowly tailored to an interest, a restriction need not "be the least-restrictive or least-intrusive means of serving the interest," but rather will be valid only if the restriction is not "substantially broader than necessary to achieve the government's interest." *Id.* Because Defendant City of Tacoma's restrictions are not even "narrowly tailored" in the content-neutral sense, as demonstrated below, it is axiomatic they are not "narrowly tailored" in the content-based sense.

"In the protest context...police may not interfere with demonstrations unless there is a 'clear and present danger' of riot, imminent violence, interference with traffic or other immediate threat to public safety." *Jones*, 465 F.3d at 57-58 (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 308-309 (1940). Moreover, "[t]he right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected." *NAACP*, 458 U.S. at 908. Thus, police may not "end[] a demonstration without notice for the slightest transgression by a single protester (or even a mere rabble rouser, wholly unconnected to the lawful protest)." *Jones*, 465

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006

F.3d at 57. The *Jones* court found that although "a few protesters demonstrated on the Interstate...their activities did not affect the peaceful tenor of the main protest, and that the few protesters who did enter the highway desisted from their conduct before the police broke up the demonstration," "the demonstration did not constitute a clear and present danger," and thus the actions of law enforcement in breaking up the demonstration "violated a clearly established constitutional right to protest." The government may not "foreclose expressive activity in public areas on mere speculation about danger." *Bay Area Peace Navy*, 914 F.2d at 1228; *see also United States v. Grace*, 461 U.S. 171, 182 (1983) (where there is no indication individual speaker's activities "in any way obstructed the sidewalks or access to the [Supreme Court building], threatened injury to any person or property, or in any way interfered with the orderly administration of the [Court]," a total ban on expressive activity in a particular location is impermissible).

Here, Defendant City of Tacoma argued it "needed to employ appropriate law enforcement action to maintain public safety and order" because (1) protesters had taken "unlawful steps—like blocking public streets—to prevent the shipment of military equipment and supplies" at "the Port of Olympia...the year before," Plaintiff Johnson "told police that those tactics might be used at the Port of Tacoma," and "police...found materials consistent with known protester tactics staged in the protest area for later use;" and (2) "in the early days of the protest, officers were assaulted and protesters tried to break through police lines." Defs.' Mot. for Sum. Judg., dkt. 27, p. 16, ll. 15-25, p. 17, ll. 1-2.

First, the significance of the "violent" "protest activity" on March 4, 2007 is undermined by the "generally peaceful" "protest activity" on every other day of the demonstration. *See* Aff. of Barrett, dkt. 29, ¶¶ 9-13, 17; Aff. of Homan, dkt. 31, Ex. 13. As in

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



*McTernan*, what threat to public safety had existed was temporally removed from Plaintiffs' arrests. As with *Jones*, what threat to public safety had existed was the result of the actions of a few protesters that did not affect the peaceful tenor of the main protest.

Moreover, the specific circumstances surrounding Plaintiffs' arrests render Defendants' argument vis-a-vis earlier violence all but incoherent. When Plaintiffs were arrested, they were not brandishing weapons or displaying aggressive behavior. *See* Aff. of Homan, dkt. 31, Ex. 13. Indeed, Plaintiff Johnson actually discussed with Tacoma Police Department Sergeant Kitselman how to avoid an altercation between Plaintiffs and other demonstrators and the police that would result in anyone getting hurt, and Plaintiffs actually delayed crossing the barricade to allow Tacoma Police Department an opportunity to reposition its forces and came over the barricade one at a time. Decl. of Taylor, Ex. C, p. 71, ll. 3-25, p. 72, ll. 1-14; Ex. H, Bates No. PORT 001876. In short, the facts and circumstances lead to the inexorable conclusion that the Tacoma Police Department did not arrest Plaintiffs for any perceived threat of violence.

Furthermore, although Defendants profess concern that Plaintiffs may have attempted to physically block the movement of military vehicles, several factors belie that assertion. First, the decision to erect barricades to prevent demonstration attendees from accessing portions of public streets was made in advance of the "suspicious backpack" incident. *See* Decl. of Taylor, Ex. E, p. 4, ll. 23-26; Aff. of Barrett, dkt. 29, ¶ 11. Moreover, Plaintiffs had already been subjected to the "no backpack rule" in advance of their arrests. Decl. of Taylor, Ex. C, p. 93, ll. 24-25, p. 94, ll. 1-6; Aff. of Barrett, dkt. 29, ¶¶ 23-24. Finally, and most importantly, after March 9, 2007 "all of the convoys from Fort Lewis had been moved" and "the military then began moving the equipment and vehicles...using...private roads, completely contained on Port

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



property." Aff. of Barrett, dkt. 17, ¶ 17. Defendants essentially concede this point in noting "[t]he activity that plaintiffs were protesting was occurring wholly on secured Port property and even without law enforcement intervention, the plaintiffs had no way to actually get on Port property." Defs.' Mot. for Sum. Judg., dkt. 27, p. 19, ll. 12-15.

The government may not "foreclose expressive activity in public areas on mere speculation about danger." *Bay Area Peace Navy*, 914 F.2d at 1228. The *Bay Area Peace Navy* trial court found "the government's interest in protecting public and naval officers from attack is significant," but found "no tangible evidence that a 75 yard security zone is necessary to protect officials during the Fleet Week ceremonies." *Id.* at 1227. The Court therefore found "the 75-yard security zone burdens substantially more speech than is necessary to further the government's legitimate interests and is therefore substantially broader than necessary to achieve the government's interest in protecting the audience on the pier from a speculative threat of violent attack or in promoting marine safety generally." *Id* at 1228 (internal quotations omitted). Here, although Defendant City of Tacoma certainly has an interest in preserving public safety and order, as with *Bay Area Peace Navy*, its decision to close off significant portions of the public streets, including a portion that contained the gate nearest the Port Administrative Office, was substantially broader than necessary to achieve its interest in protecting the Port from a speculative threat of violence or physical blocking of the movement of military vehicles.

Because Defendant City of Tacoma's act of closing off significant portions of the public streets and arresting those that would venture there is not narrowly tailored in the intermediate scrutiny sense, it is clearly not narrowly tailored in the strict scrutiny sense. Thus, regardless of

RESPONSE TO 2ND SUMMARY JUDGMENT
MOTION – Page 17 of 25

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



whether Defendant City of Tacoma's restrictions are content-based or content-neutral, the restrictions violated Plaintiffs' First Amendment rights.

B. PLAINTIFFS' FIRST AND FOURTH AMENDMENT CLAIMS AGAINST PIERCE

Defendant Pierce County appears to concede that *if* Plaintiffs were detained longer than necessary in order to prevent them from returning to the demonstration, *then* Defendant Pierce County violated Plaintiffs' First Amendment rights. Instead, Defendant Pierce County only argues (1) Plaintiffs were not held longer than necessary to complete the booking process, and (2) even if Plaintiffs were held longer than necessary, the reason for the excessively lengthy detention was not to prevent Plaintiffs from returning to the demonstration. Defs.' Mot. for Sum. Judg., dkt. 27, p. 10, ll. 16 through p. 15, l. 3.

Also, Defendants do not argue summary judgment should be granted as to Plaintiffs' Fourth Amendment claims against Defendant Pierce County, which means Defendants' titling their summary judgment motion as pertaining to "all remaining claims" is a misnomer. *Id*. at p. 3, l. 20 through p. 4, l. 3. Therefore, the Court is without authority to consider such a motion. *See* Fed. R. Civ. Pro. 56 (summary judgment must be sought by "a party," and cannot be considered on the court's own motion). Nevertheless, as discussed below, the Court would have been obligated to deny such a motion had it been brought.

"[A] policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of a crime, and for a brief period of detention to take the administrative steps incident to arrest." *Gerstein v. Pugh*, 420 U.S. 103, 113-114 (1975). "[T]he Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Id*. at 114. "[T]his determination must be made by a judicial officer either before or promptly after arrest." A "judicial determination of

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



probable cause within 48 hours of arrest will, as a general matter, comply with the promptness

requirement of *Gerstein*." *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).

However if a "probable cause determination was delayed unreasonably" it does not pass

"constitutional muster simply because it [was] provided within 48 hours." *Id*. "Examples of

unreasonable delay are delays for the purpose of gathering additional information to justify the

arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake."

*Id*. A delay motivated by a desire to chill protected speech must be another example of an

unreasonable delay.

 Moreover, a delay longer than the "brief period of detention to take the administrative

steps incident to arrest" may violate the Fourth Amendment with significantly shorter periods

of time than 48 hours where "neither extended detention of the [arrestees] nor probable cause

hearings were contemplated." *Chortek v. City of Milwaukee*, 356 F.3d 740, 746 (7th Cir. 2004);

*see also Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1351 (7th Cir. 1985) (four

hours detention for arrest for minor offense may be unreasonably long); *see also Gramenos v.*

*Jewel Companies, Inc.*, 797 F.2d 432, 437 (7th Cir. 1986) (noting the "American Law Institute

thinks two hours are enough" for the "brief period," and remanding to decide "whether four

hours is a [constitutionally] acceptable period for a non-violent misdemeanor").

 Here, there is some confusion about when Plaintiffs entered the Pierce County Jail and

the custody of Defendant County of Pierce. Pierce County Corrections Deputy Chandra Allen

recalls Plaintiffs arriving at "about 9 p.m." Decl. of Allen, dkt. 28, ¶ 6. However, Counsel for

Defendant Donna Masumoto, in a letter clarifying Defendant Pierce County's Responses to

Plaintiffs' Second Discovery Requests, indicated "[t]he specific time at

which...plaintiffs...entered the jail...on March 11, 2007, was not recorded" and "[t]he specific

RESPONSE TO 2ND SUMMARY JUDGMENT
MOTION – Page 19 of 25

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



time at which the booking process began was not recorded," but notes Plaintiff Gibbs was photographed as part of the booking process at 7:54 PM, Plaintiff Jansen was photographed at 8:27 PM, Plaintiff Hamilton was photographed at 9:19 PM, and Plaintiff Johnson was photographed at 9:17 PM. Decl. of Taylor, Ex. G. The Computer Aided Dispatch (CAD) Report indicates the female detainees arrived at the jail at 8:23 PM, and the males at 9:23 PM. Decl. of Taylor, Ex. H, Bates Nos. PORT 001878-001880.

Plaintiff Gibbs recalls the booking process concluding at approximately 11:00 PM. Decl. of Taylor, Ex. A, p. 124, ll. 6-8. Plaintiff Johnson recalls the booking process concluding at between 10:00 PM and midnight. Decl. of Taylor, Ex. C, p. 154, ll. 14-17, p. 155, ll. 11-20, p. 157, ll. 4-16, p. 159, ll. 22-25. The CAD Report indicated all 23 arrestees, including Plaintiffs, were booked sometime before 12:39 AM on March 12, 2007. Decl. of Taylor, Ex. H, Bates No. PORT 001882. Defendant County of Pierce does not record "the time of completion for all steps" of the booking process, but does record that the booking record for Plaintiff Gibbs was initiated at 8:45 PM, for Plaintiff Jansen at 9:19 PM, for Plaintiff Johnson at 10:02 PM, and for Plaintiff Hamilton at 10:07 PM. Decl. of Taylor, Ex. G. Yet Plaintiff Gibbs was not released from the Pierce County Jail until 3:05 AM on March 12, 2007, Plaintiff Jansen was not released until 2:50 AM, Plaintiff Johnson was not released until 3:00 AM, and Plaintiff Hamilton was not released until 3:00 AM. *Id*. That is, Plaintiffs were each detained for in excess of six hours by Defendant Pierce County, including a substantial period of time after the booking process was completed, and were detained for in excess of ten hours overall. *See* Decl. of Taylor, Ex. H, Bates No. PORT 001877.

Although the presence of 23 arrestees may have placed a "burden on [Pierce County] jail resources and present[ed] logistical challenges for the staff," there has been no showing that

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



burden caused the brief period of detention to take the administrative steps incident to arrest to be stretched into over six hours. Indeed, Defendant City of Tacoma took steps to assist Defendant County of Pierce in minimizing the amount of time Plaintiffs needed to be held. *See* Decl. of Taylor, Ex. C, p. 129, ll. 17-24 (Tacoma Police did "some of the booking work...so that we could be released quicker" and "took our photos and some basic information...because they wanted to release us faster"); *see also* Ex. H, Bates No. PORT 001878. Vague references to a possible "electronic difficulty" and "other individuals, who were not related to the group...also...requir[ed] attention from the booking staff" cannot resolve what is essentially a factual dispute that precludes summary judgment on the Fourth Amendment issue, at least where, as here, "[t]he 23 people who arrived on the transport bus were allowed to be booked through an abbreviated procedure...[that] allowed for their release from jail upon completion of the booking process" that means, as in *Chortek*, no one was contemplating Plaintiffs would be detained pending a judicial probable cause determination. Decl. of Allen, dkt. 28, ¶¶ 7, 9, 10.

Furthermore, if stretching the brief period into more than six hours had some improper motive, the delay may be unreasonable and thereby violative of the Fourth Amendment. *See County of Riverside*, 500 U.S. at 56.

"Hearsay is a statement...offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "A statement is not hearsay if...(2) [t]he statement is offered against a party and is (D) a statement by the party's agent or servant concerning a matter within the scope of agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d). "[A]dmissions made by an agent while acting in the scope of his employment and concerning the subject matter of his employment are binding on the principal." *Grayson v. Williams*, 256 F.2d 61, 66 (10th Cir. 1958). "Admissions by a party-opponent are excluded from the category

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



of hearsay on the theory that their admissibility in evidence is the result of the adversary system
rather than satisfaction of the conditions of the hearsay rule." Fed. R. Evid. 801(d)(2) advisory
committee's notes. "No guarantee of trustworthiness is required in the case of an admission."
*Id.* "The freedom which admissions have enjoyed from technical demands of searching for an
assurance of trustworthiness in some against-interest circumstance, and from the restrictive
influences of the opinion rule and the rule requiring firsthand knowledge, when taken with the
apparently prevalent satisfaction with the results, calls for generous treatment of this avenue to
admissibility."*Id.*

Here, an agent for the Pierce County Sheriff's Office told Plaintiff Gibbs shortly after
her arrival that she and the other arrestees "would be held until the wee hours of the morning
and that [the arrestees] would be released some 20 minutes apart and small numbers of people
would be released." Decl. of Taylor, Ex. A, p. 122, ll. 10-25, p. 123, ll. 1-6. At least one agent
for the Pierce County Sheriff's Office told Plaintiff Johnson at various points in time that they
would "start releasing [the arrestees] one at a time every 15 minutes beginning at 3 a.m., and
the last ones to get released are going to be...the ring leader." Decl. of Taylor, Ex. C, p 159, ll.
5-14. And, as Defendants note in their briefing, an agent for Pierce County Sheriff's Office told
Plaintiff Hamilton he "had been told from a higher authority that [the arrestees] were to be held
until and released in small groups, that they were going to release two or three of us at a time,
you know, half an hour or so apart from one another over the course of the whole morning so
that we wouldn't have time to go back to the Port." Decl. of Taylor, Ex. D, p. 115, l. 25, p. 116,
ll. 1-25, p. 117, ll. 1-9. These statements were made by agents for Defendant County of Pierce,
made within the scope of their employment, and concerned the subject matter of their
employment. Moreover, a reasonable jury could infer not only that the "higher authority" was

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



also an agent for Defendant County of Pierce acting within the scope of his employment, but also a decisionmaker possessing final authority. And although the specific factual patterns described by the admissions may not have come to pass, (1) indicia of reliability is not a prerequisite for the admissibility of admissions of a party-opponent, and (2) the admissions general fact pattern—that Plaintiffs release would be delayed into the "wee hours" to discourage them from returning to the Port of Tacoma—did come to pass. Therefore, summary judgment is inappropriate.

C. PLAINTIFFS' FOURTH AMENDMENT CLAIMS AGAINST TACOMA.

Defendants cite no authority for the proposition that "the Court should not even consider" "a Fourth Amendment seizure claim" against Defendant City of Tacoma for Plaintiffs' counsel's failure to identify a seizure claim in an email exchange. Defs.' Mot. for Sum. Judg., dkt. 27, p. 20, ll. 21-23. Rather, the appropriate remedy, at least in the absence of even an allegation of actual prejudice to Defendants, is by way of amendment. Fed. R. Civ. Pro. 15(a)(2). "The Court shall freely give leave [to amend the complaint] when justice so requires." *Id*.

Here, Plaintiffs were arrested for crossing the barricade after being ordered by agents of Defendant City of Tacoma not to cross the barricade. Decl. of Taylor, Ex. A, p. 65, ll. 15-16; Ex. B, p. 41, ll. 22-25; Ex. C, p. 139, ll. 9-16; Ex. D, p. 157, ll. 2-15. Defendant City of Tacoma alleges the act of crossing the barricade "hinder[ed], delay[ed], or obstruct[ed] a[] public servant in the discharge of his/her official powers or duties." Former TMC 8.17.015. Because the official duties of the arresting officers could not have included preventing political demonstration attendees from accessing a traditional public forum under the circumstances presented here, Plaintiffs' arrests were not supported by probable cause. Moreover, even if

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



order to stay on one side of the barricade was arguably within the official powers and duties of the officers, there is a factual dispute as to whether the manner of Plaintiffs' failure to follow that order indicates those officers' discharge of those powers and duties was hindered, delayed or obstructed. Therefore summary judgment is inappropriate as to Plaintiffs' Fourth Amendment claims against Defendant City of Tacoma, and to the extent the Complaint is deficient, the Court should grant Plaintiffs leave to amend.

## V. CONCLUSION

Because Defendant City of Tacoma's restrictions are content-based and not narrowly tailored to a compelling government interest, and moreover are not narrowly tailored to a significant government interest, the Court should deny Defendant City of Tacoma's summary judgment motion regarding Plaintiffs' First Amendment claims. Because Defendant City of Tacoma arrested Plaintiffs without probable cause that they had committed a crime, the Court should deny Defendant City of Tacoma's summary judgment motion regarding Plaintiffs' Fourth Amendment claims, and to the extent the Complaint is deficient, grant Plaintiffs leave to amend the Complaint. Because Defendant County of Pierce held Plaintiffs for significantly longer than the brief period necessary to complete the administrative steps incident to arrest, and because its goal in doing so was to prevent Plaintiffs from engaging in expressive activity, the Court should deny Defendant County of Pierce's motion for summary judgment regarding Plaintiffs' First Amendment claims. And because Defendant County of Pierce has not moved for summary judgment regarding Plaintiffs' Fourth Amendment claim against Defendant County of Pierce, the Court should not consider any such motion, or in the alternative should deny such motion because Plaintiffs were held in custody for longer than the brief period

The Evergreen Law Group, PS
203 E. 4th Ave., Suite 204
Olympia, WA 98501
TEL(360) 352-8004
FAX(360) 570-1006



1   necessary for administrative steps and holding Plaintiffs for a judicial determination of

2   probable cause was not contemplated.

3

4           Respectfully submitted this 9th day of August, 2010.

5                                                  _s/ Christopher Taylor_____
                                                   Christopher Taylor
6                                                  Attorney for Plaintiffs
                                                   Washington State Bar Number 38413
7                                                  E-mail: christopher@evergreenlawgrp.com

8                            CERTIFICATE OF SERVICE

9           I hereby certify that on August 9, 2010, I electronically filed the foregoing Plaintiffs'

10  Response to Defendants' Motion for Summary Judgment on All Remaining Claims with the

11  Clerk of the Court using the CM/ECF system which will send notification of such filing to the

12  following:

13      •   Jean Homan, Attorney for Defendant City of Tacoma at jhoman@ci.tacoma.wa.us, and

14      •   Donna Masumoto, Attorney for Defendant County of Pierce at

15          dmasumo@co.pierce.wa.us.

16

17                                                 _s/ Christopher Taylor_____
                                                   Christopher Taylor
18

19

20

21

22

23

24

25

26
    RESPONSE TO 2ND SUMMARY JUDGMENT          The Evergreen Law Group, PS
27  MOTION – Page 25 of 25                    203 E. 4th Ave., Suite 204
                                              Olympia, WA 98501           
28                                            TEL(360) 352-8004
                                              FAX(360) 570-1006