HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MOLLY GIBBS, WILLIAM HAMILTON,
LINDA JANSEN, and THOMAS
JOHNSON,

                                    Plaintiffs,

                    v.

CITY OF TACOMA and PIERCE
COUNTY,

                                    Defendants.

Case No. C09-5310 RBL

ORDER ON SUMMARY JUDGMENT
[Dkt. #27]

THIS MATTER is before the court on Defendants' Motion for Summary Judgment [Dkt. #27]. The case arises from the Plaintiffs' participation in a March 11, 2007 protest at the Port of Tacoma. Plaintiffs were arrested for disobeying Tacoma Police Department officers' orders to stay within the designated protest area. They were detained in the Pierce County jail before being released early in the morning of March 12, 2007.

Plaintiffs' Complaint [Dkt. #1] asserts claims under 42 U.S.C. § 1983, alleging that Defendants violated their First, Fifth, Sixth, and Fourteenth Amendment rights. In its earlier order [Dkt. #32], this court granted summary dismissal of Plaintiffs' Fifth, Sixth, and Fourteenth Amendment claims against both Defendants. Defendants now seek dismissal of all remaining claims against them, namely Plaintiffs' First and Fourth[1] Amendment claims.

---

[1] Plaintiffs do not expressly bring a Fourth Amendment claim in their complaint, but both parties have briefed the viability of such a claim.

Plaintiffs claim that the City of Tacoma[2] violated their First Amendment rights by imposing unreasonable restrictions on where they could protest, and that TPD officers arrested them without probable cause in violation of their Fourth Amendment rights. Plaintiffs claim that Pierce County violated their Fourth Amendment rights by detaining them for an unnecessarily long period of time after their arrest. They also claim that the detention was intended to prevent Plaintiffs from returning to the protest, in violation of their First Amendment rights.

Defendants seek summary judgment on all claims. They argue that the TPD's restrictions on the protest were valid because the restrictions were content-neutral, were narrowly tailored to serve a significant government interest, and left ample alternatives for communication. Defendants argue that the TPD officers had probable cause to arrest Plaintiffs for obstruction of justice. Defendants also argue that Pierce County is not liable for any alleged constitutional violations, because they were not caused by any municipal custom or policy.

For the reasons that follow, Defendants' Motion for Summary Judgment [Dkt. #27] is GRANTED. All of Plaintiffs' remaining claims against both Defendants are DISMISSED with prejudice.

## I.      FACTS

In March 2007, the U.S. Army shipped military equipment and vehicles through the Port of Tacoma en route to the wars in Iraq and Afghanistan. Over the course of eleven days, many people came to the port to protest the military activities. For several days of the protest, while the military equipment was staged on port property and moved to the ship, a block-sized section of East 11th Street was closed to vehicles and reserved for the protest activity. This designated protest area was adjacent to and within earshot of the military activity occurring on restricted port property[3]. The western boundary of the protest zone was defined by bike rack barricades. Sections of East 11th Street and Milwaukee Way immediately west of the protest zone were closed to all vehicular and pedestrian traffic during the protest. The closed-off area

---

[2] Plaintiffs' claims against the City of Tacoma all arise from actions by the Tacoma Police Department. Accordingly, Tacoma will hereafter be referred to as the ("TPD").

[3] "Restricted" port property refers to areas of the port that are not open to the public.

encompassed train tracks, a bridge (under which the military vehicles were passing), and an entrance to restricted port property[4].

On March 11, 2007, Plaintiffs participated in the Port of Tacoma protest. Plaintiffs intended to deliver their "Citizen's Injunction to Halt the Shipment of Military Material to Iraq" to the port administrative offices. Those offices are located inside the port entrance that was blocked off to the public. The offices were not within sight or sound of the protest zone. There is another port entrance that was unaffected by the police presence, which is staffed by security personnel at all times.

During the March 11, 2007 demonstration, Plaintiff Johnson spoke to the TPD sergeant in charge of the scene. Johnson advised the sergeant that several protestors were going to climb over the barricades on the western boundary of the protest zone. The sergeant told the protestors that if they climbed over the barricades, they would be arrested. Plaintiffs and 22 other protestors climbed over the barricades, and were promptly arrested for disobeying the officers' orders.

Plaintiffs and the other arrestees were taken to the Pierce County jail. Plaintiffs were booked between 10:00 p.m. and 12:00 a.m. They were released around 3:00 a.m. on March 12, 2007. Plaintiff Hamilton testified that a prison employee told him that a higher authority had ordered the prison guards to release the arrestees in small groups over the course of many hours. Hamilton claims he was told that the release plan was intended to prevent the protestors from returning to the port.

Plaintiffs claim that the TPD's and Pierce County's actions on March 11 and 12, 2007 violated their civil rights. Defendants seek summary dismissal of all possible claims against them.

## II.      DISCUSSION

### A.      Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary

---

[4] The restrictions on where the demonstrators could protest were imposed and enforced by the Tacoma Police Department.

judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**B.    Claims Against The City of Tacoma**

**1.    Municipality Liability**

A plaintiff bringing a 42 U.S.C. § 1983 claim against a municipality for civil rights violations must prove three elements: (1) a violation of his/her constitutional rights, (2) the existence of a municipal policy or custom of the municipality, and (3) a causal nexus between the policy or custom and the constitutional violation. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978).

For the purposes of this order, the court will assume, without deciding, that the TPD's restrictions on the port demonstration and the consequent arrests were part of a municipal policy. This assumption does not apply to actions by Pierce County.

**2.    First Amendment Claim against City of Tacoma**

Plaintiffs claim that the TPD's restrictions on the location of their protest violated their First Amendment rights. Plaintiffs assert that the TPD did not impose reasonable time, place, and manner restrictions on the March 11, 2007 demonstration. The TPD argues that its restrictions were valid because they were content-neutral, were narrowly tailored to serve a significant government interest, and left ample alternatives for communication.

It is undisputed that Plaintiffs were protesting on public grounds. "'[W]hen expressive conduct occurs on public grounds…the government can impose reasonable time, place, and manner restrictions.'" *U.S. v. Griefen*, 200 F.3d 1256, 1259-1260 (9th Cir. 2000) (*quoting United States v. Johnson,* 159 F.3d 892, 895 (4th Cir.1998)). "Such restrictions are constitutionally valid if they are (1) content-neutral, (2) narrowly tailored to serve a significant governmental interest, and (3) leave open 'ample alternatives for communication.'" *Id.* at 1260 (*quoting United States v. Linick,* 195 F.3d 538, 543 (9th Cir.1999)).

    **a.**     **Content Neutrality**

Plaintiffs claim that the TPD's restrictions were not content neutral. They argue that the TPD's actions were motivated by disagreement with the demonstrators' anti-war views. Plaintiffs also argue that the TPD's placement of barricades favored those protestors intending to communicate with longshoremen and military personnel over those trying to communicate with port administrators. Defendants argue that the TPD's restrictions were content neutral because they were imposed solely to ensure public safety and were applied equally to all demonstrators.

"The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (*citing Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 295 (1984)). "The government's purpose is the controlling consideration." *Id.* Restrictions on where individuals may protest are not based on disagreement with the message conveyed if those restrictions "apply equally to all demonstrators, regardless of viewpoint." *Hill v. Colorado*, 530 U.S. 703, 719 (2000).

The TPD is responsible for maintaining public order and ensuring the safety of its citizens. *See, e.g., Menotti v. City of Seattle*, 409 F.3d 1113, 1130-32 (9th Cir. 2005). Defendants provide evidence that the TPD's restrictions were imposed to maintain public order and safety. [*See* Dkt. #29, Barrett Aff.]. Defendants point to the train tracks, bridge, military convoy, and port entrance just west of the protest area. They argue that, given the

circumstances, allowing public access to those nearby hazards presented dangers to the protestors, longshoremen, and military personnel. Defendants assert that preventing those dangers from materializing was the underlying purpose for the TPD's restrictions. Plaintiffs provide no evidence that the TPD bound the protest area because it disagreed with the views being expressed. They baldly assert that the restrictions were based on disagreement with the protestors' anti-war views. This does not satisfy Plaintiffs' burden of showing a content-based purpose behind the TPD restrictions.

Plaintiffs similarly provide no evidence that any demonstrator was treated differently than any other based on their views or the message conveyed. All members of the public were treated the same and the rules imposed by the TPD were applied uniformly and consistently. [Dkt. #29, Barrett Aff.]. There is no evidence showing, for example, that pro-war demonstrators were or would have been treated any differently than the anti-war protestors. The fact that some parts of the port were within sight and earshot of the designated protest area, while others were not, does not mean the TPD's restrictions were applied unequally. The evidence shows that the location of the protest area was based on safety concerns and proximity to the military activity, not favored versus disfavored views. *See Id*.

Plaintiffs have not and cannot show that the TPD's restrictions were content-biased. The restrictions were content neutral as a matter of law.

**b.    Narrowly Tailored to Serve a Significant Government Interest**

Plaintiffs claim that the TPD's restrictions were not narrowly tailored to serve a significant government interest. Plaintiffs argue that the TPD closed off larger sections of public road than was necessary to ensure public order and safety. Defendants contend that the TPD imposed the least restrictive measures possible to ensure public safety while allowing the demonstrators to express their opinions.

"[T]he government has a significant interest in maintaining public order; indeed this is a core duty that the government owes its citizens. The Supreme Court has declared that '[i]t is a traditional exercise of the States' police powers to protect the health and safety of their citizens.'" *Menotti*, 409 F.3d at 1131 (*quoting Hill*, 530 U.S. at 715). "A narrowly tailored

requirement need not be the least restrictive means of furthering the [government's] interests, but the restriction may not burden substantially more speech than necessary to further the interests." *U.S. v. Baugh*, 187 F.3d 1037, 1043 (9th Cir. 1999) (*citing Ward*, 491 U.S. at 799).

As discussed above, the TPD has shown that its restrictions were imposed to ensure public safety and order. In deciding where to locate the protest zone, the TPD made sure the demonstrators could be as close as safely possible to the activity they were protesting. [Dkt. #29, Barrett Aff.]. The protestors were immediately adjacent to restricted port property. *See Id.* at Ex. 3. They were within audible and visible range of the military vehicles and loading activities. [Dkt. #29]. The closed sections of road presented public safety concerns. *Id.* The TPD's restrictions did not burden more speech than necessary to ensure public order and safety, and thus were narrowly tailored to serve a significant government interest as a matter of law.

### c.      Alternative Channels of Communication

Plaintiffs do not dispute that the TPD's restrictions left ample alternatives for communication. "In the 'ample alternatives' context, the Supreme Court has made clear that the First Amendment requires only that the government refrain from denying a 'reasonable opportunity' for communication." *Monetti*, 409 F.3d at 1141 (*citing City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54 (1986)). The designated protest area provided Plaintiffs a reasonable opportunity to communicate their message. The TPD blocked off the port entrance where Plaintiffs wished to deliver a citizens injunction, but Plaintiffs had various alternative ways to deliver their injunction. For example, Plaintiffs could have utilized the other port entrance which was unaffected by the police restrictions. Defendants provided Plaintiffs ample alternatives for communication as a matter of law.

The TPD's restrictions on Plaintiffs' speech were content-neutral, were narrowly tailored to serve a significant government interest, and left open ample alternatives for communication. Therefore, those restrictions were valid as a matter of law. Plaintiffs' First Amendment claim against the City of Tacoma is DISMISSED.

### 3.        Fourth Amendment Claim against City of Tacoma

Plaintiffs claim that they were arrested in violation of their Fourth Amendment rights. They argue that the TPD officers did not have probable cause to arrest Plaintiffs for obstruction of justice without a warrant. Defendants argue that the arrests were valid because Plaintiffs disobeyed TPD officers' lawful orders immediately in front of those officers.

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *U.S. v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (*citing Beck v. Ohio,* 379 U.S. 89, 91 (1964)).

Tacoma has the power to "regulate," "control," and "vacate" its "streets, alleys, avenues, sidewalks, wharves, parks, and other public grounds." RCW 35.22.280. Under these powers, the TPD has the authority to close portions of public streets to vehicular and pedestrian traffic. *See, e.g., Schoenfeld v. Seattle*, 265 F. 726 (W.D. Wash. 1920).

Under RCW 9A.76.020, "Obstructing a law enforcement officer," "[a] person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." Washington courts have consistently held that disobeying an officer's lawful orders constitutes obstruction of justice. *See, e.g., State v. Little*, 116 Wash.2d 488 (1991) (holding that defendant's flight from officers and refusal to stop when ordered to do so constituted obstruction); *State v. Contreras*, 92 Wash. App. 307 (Div. 2, 1998) (upholding warrantless arrest of defendant who disobeyed officer's commands to raise his hands and get out of the car).

Obstruction is a gross misdemeanor. RCW 9A.76.020. "A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of the officer…" RCW 10.31.100.

The TPD had the authority to impose restrictions on where Plaintiffs could protest. Plaintiffs knew of the restrictions in place on March 11, 2007. TPD officers ordered Plaintiffs to abide by those restrictions. Plaintiffs all admit that they knew they would be arrested for crossing the TPD barricades onto a closed section of street. [*See* Dkt. #31, Homan Aff., at Ex.

#s 1, 2, 3, 4]. Indeed, Plaintiffs admit that getting arrested was part of their intended political speech[5]. *Id.*

Plaintiffs disobeyed the TPD's restrictions in the immediate presence of TPD officers and against the officers' express orders. Thus, those officers had probable cause to arrest Plaintiffs for obstruction of justice as a matter of law. Plaintiffs' Fourth Amendment claim against the City of Tacoma is DISMISSED.

## C.    Claims against Pierce County

Plaintiffs claim that Pierce County violated their First and Fourth Amendment rights. Plaintiffs allege that they were held in county jail longer than necessary, in violation of their Fourth Amendment rights. They also allege that the detention was intended to prevent them from returning to the demonstration, violating their First Amendment rights. Defendants assert that Pierce County cannot be liable for Plaintiffs' § 1983 claims because no policy or custom of the county caused the alleged constitutional deprivations. Plaintiffs respond that a "higher authority" told the prison guards when, how, and why to release Plaintiffs. They assert that this higher authority could be a decisionmaker possessing final authority to implement county policies or customs.

A plaintiff asserting a § 1983 claim for municipal liability must show the constitutional violation he or she allegedly suffered resulted from an official policy, practice, or custom of the county. *See Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) (*citing Monell*, 436 U.S. 658). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481. "The fact that a particular official-even a policymaking official-has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 481-82 (*citing Oklahoma City v. Tuttle,* 471 U.S. 808, 822-24 (1985)). "The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at 482-83.

---

[5] Plaintiffs <u>intended</u> to get arrested. [*See* Dkt. #31, Homan Aff., at Ex. #s 1, 2, 3, 4]. Now they are seeking damages from the officers who arrested them: "protesting for profit."

In *Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992), the Ninth Circuit held that a fire chief's discretionary decision to fire the plaintiff (a firefighter) could not be attributed to the municipality. The court reasoned that "[m]unicipal liability could be imposed on the basis of [the fire chief's] actions only if he was responsible for establishing the City's employment policy." *Id*. at 1350.

The determination of whether an official is a final decisionmaker for *Monell* purposes is a legal question to be resolved by the trial judge. *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989). "[T]he trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Id*.

Plaintiffs claim that an agent for the Pierce County Sheriff's Office told Hamilton that he "had been told from a higher authority that [the arrestees] were to be held until and released in small groups…half an hour or so apart from one another over the course of the whole morning so that [the arrestees] wouldn't have time to get back to the port." [Dkt. #33, Response (*citing* Dkt. #34, Taylor Dec., at Ex. D)]. Plaintiffs provide no evidence demonstrating that the "higher authority" was responsible for establishing Pierce County jail policies. Plaintiffs do not provide the authority's name, his position, or anything else that would allow the court to identify him. At most, Plaintiffs demonstrate that the unnamed authority had discretion to determine when and how that particular group of arrestees would be released. This is insufficient to establish municipality liability as a matter of law.

Plaintiffs provide no other evidence of a Pierce County custom or policy linked to their alleged constitutional deprivations. Therefore, Plaintiffs' First and Fourth Amendment claims against Pierce County are DISMISSED.

**CONCLUSION**

Defendants' Motion for Summary Judgment [Dkt. #27] is GRANTED. All of Plaintiffs' remaining claims against both Defendants are DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated this 16th day of September, 2010.


RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE